ORIGINAL

KENJI M. PRICE #10523
United States Attorney
District of Hawaii

KENNETH M. SORENSON
Chief, Criminal Division
MARC A. WALLENSTEIN #10456
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850

TARYN M. MEEKS
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 29 2018

at 10 o'clock and 00 min. A M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. NO.   17-00446 SOM |
| ) | |
| Plaintiff, ) | MEMORANDUM OF PLEA |
| ) | AGREEMENT |
| vs. ) | |
| ) | Date:  August 29, 2018 |
| IKAIKA ERIK KANG ) | Time:  9:30 a.m. |
| ) | Judge: Hon. Kenneth J. Mansfield |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF PLEA AGREEMENT**

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the UNITED STATES OF AMERICA, by its attorney, the United States Attorney for the District of Hawaii, and the defendant, IKAIKA ERIK KANG, and his attorneys Birney Bervar, Peter Wolff and Alexander Silvert, have agreed upon the following:

## THE CHARGES

1. The defendant acknowledges that he has been charged in the Indictment with violating Title 18, United States Code Section 2339B.

2. The defendant has read the charge against him contained in the Indictment and those charges have been fully explained to him by his attorneys.

3. The defendant fully understands the nature and elements of the crimes with which he has been charged.

## THE AGREEMENT

4. The defendant will enter a voluntary plea of guilty to Counts 1, 2, 3 and 4 of the Indictment, each count charging him with separate violations of Title 18 U.S.C. § 2339B by knowingly attempting to provide material support to a foreign terrorist organization. In return for his guilty plea to the above charges, the United States agrees that it will not charge the defendant with other violations of federal law known to it as of the time of the entry of this agreement, including but not limited to

violations of the espionage act, 18 U.S.C. §§ 793, 794, 798; violations of other terrorism-related statutes; and violations of federal firearms statutes. The parties have entered this agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the specific terms of which are set forth in ¶ 10(b) of this agreement.

5. The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6. The defendant enters this plea because he is in fact guilty of attempting to provide material support to a foreign terrorist organization as charged in Counts 1, 2, 3 and 4 of the Indictment, and agrees that his plea to these charges is voluntary and not the result of force or threats.

## PENALTIES

7. The defendant understands that the penalties for the offenses to which he is pleading guilty are as follows.

    a. As to each of Counts 1 through 4, a term of imprisonment of not more than 20 years, a fine of up to $250,000, plus a term of supervised release of any term of years or life.

    b. In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty. The defendant agrees to pay

3

$100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing. The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

## FACTUAL STIPULATIONS

8. The defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charges to which the defendant is pleading guilty:

   a. At all times relevant to the charges in this case, the defendant was a member of the United States military. Defendant is a Sergeant First Class (E-7) in the United States Army and is trained as an air traffic controller. At all times relevant to the charges in this case the defendant was assigned to the 25th Combat Aviation Brigade, 25th Infantry Division, at Wheeler Army Airfield. Within the scope of his duties in the U.S. Army, the defendant held a SECRET security clearance, which allowed him to access classified U.S. national defense information. Also within the scope of his employment, the defendant was a U.S. Army combatives instructor. Defendant was trained in personal hand-to-hand fighting techniques, and was trained to teach those fighting techniques to others.

4

Defendant was also trained in the use of small arms, such as knives, pistols and assault rifles.

   b. On or about October 15, 2004, the United States Secretary of State designated al- Qaeda in Iraq (AQI), then known as Jam at al Tawid wa' al-Jahid, as a Foreign Terrorist Organization (FTO) under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive order 13224.

   c. On or about May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant (ISIL) as its primary name. The Secretary of State also added the following aliases to the FTO listing: The Islamic State of Iraq and al-Sham ("ISIS" – which is how the FTO will be referenced herein), The Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furquan Establishment for Media Production. On September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS. To date, ISIS remains a designated FTO.

d.  Beginning on a specific date unknown, but at least by early 2016, the defendant became sympathetic to ISIS. By August 2016, Defendant regularly watched violent ISIS propaganda videos online. The videos depicted ISIS members violently executing civilian and military victims. At that time, ISIS was involved in substantial, widespread and sustained military conflict against the armed forces of the United States, Iraq, Syria, and a variety of other nations and paramilitary groups. The fighting was largely centered in Iraq and Syria. During this period, ISIS was also involved in sponsoring, encouraging and aiding its members in committing various acts of terrorism worldwide, including mass shootings, bombings and vehicular attacks.

e.  In or about August 2016, the Federal Bureau of Investigation (FBI) began an investigation in order to determine whether, and to what extent, the defendant presented a threat to other military personnel and members of the public, based on his growing sympathies towards ISIS. The FBI gathered information from various sources who worked with, knew, or lived with the defendant.

f.  From in or about August to October 2016, Defendant made numerous statements in support of ISIS, and expressed a desire to join ISIS. Defendant spoke approvingly about committing acts of violence. At the time,

6

Defendant owned an AR-15-style assault rifle and a pistol, both of which he kept at his residence which was off-base and in a residential area of Oahu.

  g. In or about November 2016, an undercover FBI agent initiated contact with the defendant. Defendant told the undercover FBI agent that he wanted to teach his combatives skills to members of ISIS. Defendant subsequently met other FBI undercover agents who presented themselves to the defendant as persons with connections and access to ISIS.

  h. On June 21, 2017, during a meeting with undercover FBI agents who the defendant believed had connections to ISIS, the defendant provided those undercover agents with sensitive, non-public military documents, which the defendant intended the undercover agents to provide to ISIS. The sensitive military documents provided by the defendant were voluminous in nature and were provided in digital format. The documents included, among other things: the U.S. military's "weapons file," which describes all the armament capabilities of the U.S. armed forces; details about a sensitive mobile airspace management system used by the U.S. military; various military manuals, including the Soldiers Manual for Common Tasks; and documents containing personally identifiable information of U.S. service members. At this time the defendant knew ISIS to be a foreign

terrorist organization; knew that ISIS engaged in terrorist activity; and knew that the United States was engaged in a military conflict against ISIS.

   i. On June 23, 2017, during a second meeting with the undercover FBI agents, the defendant gave them additional non-public military documents, including fourteen (14) documents classified at the SECRET level, 12 of which remain classified today. The defendant provided these documents in digital format to the undercover agents knowing that the documents were classified, and with the knowledge and understanding that the undercover agents would provide the documents to ISIS. The documents that defendant hoped to provide to ISIS were classified air traffic control documents. The documents described call signs, aircraft types, route points, directives, mission procedures, radio frequencies, and other classified information, all of which would have been helpful to ISIS.

   j. During the period of July 6 through July 8, 2017, the defendant met with the same undercover agents at a residential location in Honolulu, Hawaii. They introduced the defendant to two additional FBI undercover personnel, one who purported to be a high-ranking ISIS leader or "sheikh," and another who played the role of an ISIS fighter who was present in order to learn combatives and weaponry techniques from the defendant. The defendant and the undercover agents had previously agreed to video record the defendant's training sessions with

the purported ISIS fighter so that ISIS could then use the video to train other ISIS fighters.

  k. During the two-day period of July 7 and July 8, 2017, while at the residential location with the FBI undercover personnel, the defendant provided a small aerial drone, a military chest rig (which is a tactical vest), and other military-style clothing and gear to the undercover personnel, who he believed to be members of ISIS. The defendant described for them how they could operationally utilize the drone to track U.S. troop movements and gain tactical advantage by evading American armored vehicles.

  l. On July 8, 2017, while at the residential location in Honolulu, the defendant conducted a military combatives training session, using the purported ISIS fighter as defendant's training opponent and partner. The training session was video recorded with the agreement, knowledge and intent of the defendant that the video be taken back to ISIS-controlled territory in order to be used to train ISIS fighters in hand-to-hand fighting techniques and weapons usage.

  m. On July 8, 2017, while at the same residential location, the defendant swore allegiance to ISIS in an informal ceremony conducted by the purported ISIS sheikh. During the ceremony, the defendant swore an oath of loyalty, known as "bayat," to the leader of ISIS, Abu Bakr al-Baghdadi.

Defendant swore the oath in both English and Arabic. Defendant then accepted and kissed an ISIS flag that was given to him as a gift by the purported ISIS sheikh.

      n.    The defendant agrees that the sensitive and classified military documents that he provided to the undercover agents, and the gear and training that he provided to the purported ISIS fighter, were provided by defendant with the intent to aid ISIS, a designated foreign terrorist organization. The defendant further agrees that the materials and training that he provided constituted an attempt by the defendant to provide material assistance and support to ISIS.

      9.    Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing. The charges to which the defendant is pleading guilty reflect the essence of his conduct.

## SENTENCING STIPULATIONS

      10.    Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing

of the defendant in connection with this matter.

    a.    <u>Factual stipulations</u>:  The parties stipulate to the facts set forth in Paragraph 8 of this agreement.

    b.    <u>Rule 11(c)(1)(C)</u>:  This Plea Agreement is entered into pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which authorizes the parties to agree that a specific sentence is the appropriate disposition of the case.  The government and the defendant agree that the defendant shall serve a period of imprisonment of twenty-five (25) years for the violations set forth in Counts 1, 2, 3 and 4 of the Indictment.  The parties agree that the Court shall apportion the twenty-five (25) year sentence among the four (4) counts of conviction at its discretion.  The parties also agree that the government will seek a lifetime term of supervised release, and the defendant will not seek less than a 20 year term of supervised release, at sentencing.  The parties agree that no fine shall be imposed.

    c.    Defendant understands that, pursuant to Rule 11(c)(3) of the Federal Rules of Criminal Procedure, the Court may accept this Agreement, reject it, or defer a decision until the Court has reviewed the presentence report.  If the Court accepts the Plea Agreement, it will inform the Defendant that the agreed upon disposition of a sentence as set forth above will be included in the judgment.

11

d. The parties agree that if the Court rejects the agreed upon sentencing range, the Defendant has the right to withdraw his plea of guilty pursuant to Federal Rule of Criminal Procedure 11(c)(5)(B). In addition, the parties agree that if the Court rejects the agreed upon sentence, the United States shall have the right to withdraw from the Plea Agreement.

e. The parties stipulate that this agreement reflects the parties' deliberative review of the Title 18, U.S.C. § 3553(a) sentencing factors, the possible guideline sentencing ranges applicable to the facts of this case, and a review of evidentiary and legal issues impacting the case. Based upon a review of these factors, the parties agree that the agreed upon disposition is appropriate and does not undermine the statutory purposes of sentencing.

f. The United States Attorney agrees that the defendant's agreement herein to enter into this agreement constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant. Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if the defendant is otherwise eligible. The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to

argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

## DISPUTED FACTS

11.  Because this agreement is entered into pursuant to Fed. R. Crim. Proc. Rule 11(c)(1)(C), the parties have not identified any specific areas of dispute under the Sentencing Guidelines as contemplated by USSG § 6B1.4.

## APPEAL/COLLATERAL REVIEW

12.  The defendant is aware that he has the right to appeal his conviction and the sentence imposed. The defendant knowingly waives the right to appeal his conviction and sentence, or the manner in which the sentence was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this Agreement. The defendant understands that this waiver includes, but is not limited to, the right to assert any constitutional challenges to the defendant's conviction and guilty plea on appeal or collateral review, including any arguments that the statute to which the defendant is pleading guilty is unconstitutional, and any claim that the statement of facts provided in this Agreement are insufficient to support the defendant's guilty plea.

      a. The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge based on a claim of ineffective assistance of counsel.

## IMPOSITION OF SENTENCE

      13. The defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines. The defendant agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

      14. The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary. The defendant understands that the Court will not accept an agreement unless the Court determines that charges adequately reflect the seriousness of the actual offense behavior, and accepting the Agreement will not undermine the statutory purposes of sentencing.

## **WAIVER OF TRIAL RIGHTS**

15. The defendant understands that by pleading guilty he surrenders certain rights, including the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, then he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

   c. If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or

15

she was persuaded of the defendant's guilt beyond a reasonable doubt.

  d. At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those prosecution witnesses, and his attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on his own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

  e. At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

  16. The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph. The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

  17. If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea after the Court has accepted the plea agreement in this case, the defendant agrees that any admission of

16

guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the defendant later proceeds to trial.  The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea entered is later withdrawn.  The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it.  Under those circumstances, the United States may not use the defendant's statements either at trial, or in pretrial proceedings, for any purpose.

18.   The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

19.   The defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, in order to induce the defendant to plead guilty.  Apart from any

17

written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

20. To become effective, this Agreement must be signed by all signatories listed below.

21. Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.

DATED: Honolulu, Hawaii, __August 29, 2018__.

AGREED:

KENJI M. PRICE
United States Attorney
District of Hawaii

_____
KENNETH M. SORENSON
Chief, Criminal Division

_____
IKAIKA ERIK KANG
Defendant

_____
MARC A. WALLENSTEIN
Assistant U.S. Attorney

_____
BIRNEY B. BERVAR
Attorney for Defendant

_____
For TARYN M. MEEKS
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice

_____
ALEXANDER SILVERT
Federal Public Defender
Attorney for Defendant